UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARROLL INGRAM,

     Plaintiff,

v.                                 Case No. 6:16-cv-150-Orl-37TBS

SECRETARY OF THE ARMY,

     Defendant.

_____

**ORDER**

Plaintiff Harroll Ingram, a tenured employee of the United States Army, sues the

Secretary of the Army under Title VII of the Civil Rights Act of 1964 ("**Title VII**") on

theories of race discrimination, hostile work environment, and retaliation. (Doc. 1.) He

asserts that his Caucasian supervisors discriminated against him because he is

African-American by reassigning him from a lead engineering position after he

complained of a conflict with a Caucasian coworker. Arguing that it is entitled to

judgment as a matter of law on Plaintiff's claims, Defendant moved for summary

judgment on June 2, 2017. (Doc. 27 ("**Motion**").) For the following reasons, the Court

finds that the Motion is due to be granted.

## I.    BACKGROUND[1]

In 2003, Plaintiff began working as a computer systems engineer for Defendant's

---

[1] In resolving the Motion, the Court views all record evidence and reasonable inferences in the light most favorable to the nonmovant—Plaintiff Harroll Ingram. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006).

Program Executive Office for Simulation Training and Instrumentation ("**PEO STRI**"), which was responsible for implementing a number of gunnery-related training programs for the Army's combat vehicles—Abrams, Stryker, and Bradley. (Doc. 27-1, p. 4, 15; *see also* Doc. 28-3, p. 31.) Plaintiff worked in PEO STRI's Ground Combat Tactical Trainers ("**GCTT**") Division, which was comprised of integrated product teams, or a group of government employees and contractors assigned to different job duties that work toward a common goal. (Doc. 28-3, p. 31.) The basis for Plaintiff's suit concerns his conflict-laden time working on one particular team that ultimately led to his reassignment on December 10, 2010. (*See* Doc. 1, ¶¶ 26–46.)

A.    **Assignment to the Bradley Gunnery Team**

On January 27, 2010, John Collins ("**Mr. Collins**"), Plaintiff's direct supervisor, informed Plaintiff that he was being reassigned to replace a peer, Ray Courech ("**Mr. Courech**"), as lead engineer on the Bradley Gunnery Team.[2] (Doc. 27-3, p. 62.) The Bradley Gunnery Team worked on three projects—the Bradley Advanced Training Systems ("**BATS**"), the Conduct of Fire Trainer-Enhanced ("**COFT-E**"), and the Conduct of Fire Trainer-Situational Awareness ("**COFT-SA**"). (Doc. 27-1, p. 14; Doc. 28-3, p. 41.)

On the Bradley Gunnery Team, Plaintiff began serving as lead engineer and test director on the BATS and COFT-E Projects. (Doc. 27-1, p. 15.) As lead engineer, Plaintiff reviewed the work other systems engineers concerning technical aspects of a particular project, such as software or hardware. (*Id.*; *see also* Doc. 27-4, pp. 9–10.) As test director,

_____

[2] Plaintiff testified that Mr. Courech is Caucasian.  (Doc. 27-1, p. 14.)

Plaintiff primarily controlled and directed test team efforts, coordinated test schedule changes, ensured availability of contractor support, maintained logs, identified and categorized deficiencies, interpreted contract requirements, and resolved test team conflicts. (Doc. 27-3, p. 88.)

## B. Conflict with Robert Briar

According to Plaintiff, on April 5, 2010, he received an unsolicited email from a team member, Robert Briar ("**Mr. Briar**"), informing Plaintiff that he was not going to allow Plaintiff to prevent him from doing his job the way Mr. Courech—the team's former lead engineer—had done. (Doc. 27-1, pp. 13–14, 17.) Mr. Briar, who is Caucasian, served as a support contractor, acting as a logistician and a subject matter expert ("**SME**") on the Bradley Gunnery Team. (Doc. 27-5, pp, 5, 7, 8.) Given Mr. Briar's military service operating Bradley fighting vehicles and his certification as a Bradley master gunner, he was uniquely qualified to act as SME. (*Id.* at 5, 20–21, 24.)

Problems between Plaintiff and Mr. Briar worsened over the course of 2010. The first example concerned a dispute about a trip to Fort Sill in connection with a developing project called the Bradley Fire Support Team ("**BFIST**"). (Doc. 27-1, p. 18.) On May 6, 2010, Mr. Briar emailed Plaintiff and Chris Dunlap ("**Mr. Dunlap**"), the project director for the existing Bradley Projects, expressing concern that the Fort Sill trip would likely delay BATS testing at another military installation. (Doc. 27-3, p. 68.) Based on Mr. Briar's concerns, Mr. Dunlap cancelled the trip to Fort Sill. (*Id.*) In response, Plaintiff emailed Mr. Dunlap and Trudy Ryan ("**Ms. Ryan**"), "the overall gunnery lead engineer" for the Bradley and Abrams gunnery programs. (*See* Doc. 27-3, p. 62; *see also* 27-1, p. 15.) Plaintiff

expressed the following:

> I am surprised that you, [Mr. Dunlap], have decided to use [Mr. Briar's] message over my leadership to stop the [Fort Sill] trip. I am the Lead Engineer and Test Director for the . . . BATS . . . effort . . . . [Mr. Briar's] message has so many references to "I" that I am not sure if [Mr. Briar] is running the show. If [Mr. Briar] is going to be the back-door Leader of the BATS effort, please let me know so I can gear-up to follow [Mr. Briar]—I have no problem with that. If you want me to lead, then let me lead and stop taking back-door opinions from [Mr. Briar] and second guessing/stopping my leadership/progress.

(Doc. 27-3, p. 68.) This exchange continued with Mr. Briar responding to Plaintiff's email:

> You, [Plaintiff], are the test director but do you even know how to power up the system? You have the title of test director[,] great. But you know nothing about operating and training on this system. If you want to use me in the SME capacity then when I offer an opinion listen to it. Let's get one thing straight[,] I do NOT work for you and I do NOT report to you. I work for [Mr. Dunlap]. I report to [Mr. Dunlap]. The primary mission I am here for is to give him my expertise as a Master Gunner and anything else he needs.

(*Id.* at 67.)

On July 29, 2010, Plaintiff reached out to Mr. Dunlap and Ms. Ryan[3] concerning an incident where Mr. Briar had reported to customers that certain systems on the BATS Project were "far from ready." (*Id.* at 72; *see also* Doc. 27-5, p. 9.) Plaintiff remarked that:

> [Mr. Briar's] behavior is detrimental to the team's progress and undermines my efforts to maintain a positive and productive atmosphere that promotes cooperation from our extended teammates. [Mr. Briar] showed this same behavior earlier and led me to complained [sic] about his back-door conversations with you, [Mr. Dunlap,] that undermined my

---

[3] It is undisputed that Mr. Dunlap and Ms. Ryan are Caucasian. (Doc. 28-3, p. 51; Doc. 27-3, p. 5.)

efforts relative to the BFIST startup. I hope you will take actions to stop the negative behavior/activity."

(Doc. 27-3, p. 72.) On July 30, 2010, Plaintiff and Mr. Briar met with Mr. Collins, Ms. Ryan, Mr. Dunlap, and Joe Labalbo ("**Mr. Labalbo**"), head of the GCTT Division ("**July 30 Meeting**"). (Doc. 27-1, p. 19; *see also* 27-5, p. 15.) At the July 30 Meeting, a consensus was reached that Mr. Briar would not email customers and that a government employee, as opposed to a contractor, was in charge while at a testing site. (Doc. 27-1, p. 19.)

Further problems concerning the division of labor arose on September 28, 2010, when Mr. Dunlap, prompted by Plaintiff's inquiry, emailed the team concerning field testing of BATS. (Doc. 27-3, pp. 77-80.) He advised them that he had asked:

> [Mr. Briar] as the Logistician to develop the field schedules which [the team has] seen. Additionally, [Mr. Briar is] looking at team member availability (leave, other travel, etc.) to aid in scheduling. Ultimately, I am responsible for who travels, when, and where as [project director]. I consider team distribution and travel planning a logistics function and comes under Mr. Briar's [responsibility.] Please work with him to establish team make up . . . . ("**September 28 Email**")

(*Id*.) The following day, Plaintiff forwarded the September 28 Email to Mr. Collins and copied Mr. Dunlap. (*Id*. at 79.) Plaintiff explained that unlike on the BATS Project, his prior teams tasked the test director with testing schedules and test team makeups. (*Id*.) Mr. Dunlap responded on September 29, 2010, stating that he did not believe Mr. Briar's task of scheduling and planning travel impacted how testing was conducted. (*Id*.) On September 30, 2010, Plaintiff and Mr. Briar again met with Mr. Collins, Mr. Dunlap, and Mr. Labalbo, resulting in the directive that Mr. Briar give his testing schedule to Plaintiff

before presenting it to the BATS team ("**September 30 Meeting**"). (Doc. 27-1, p. 22; *see also* Doc. 27-3, p. 90.)

Despite the September 30 Meeting, the testing schedule conflict was not resolved, prompting Plaintiff to email Mr. Dunlap again on October 1, 2010:

> I am assuming [Mr. Briar] is not clear on the duties of the Lead Engineer and Test Director. I have included the primary duties below . . . I think [Mr. Briar] might be conducting himself the way he is because you, [Mr. Dunlap], are ok with it. I am not used to a support contractor interfacing with a Government Test Director the way [Mr. Briar] does.

(Doc. 27-3, p. 88.)

Matters came to a head when Plaintiff and Mr. Briar disagreed about the inclusion of a USB port on the COFT-E Project. (*Id.* at 100.) On December 1, 2010, Plaintiff emailed the team and stated that "the USB violates [Department of Defense] security policy and requires unnecessary [Internal Audit] requirements." (*Id.*) In response, Mr. Briar remarked that the team could "still implement the USB and have it turned off," as the team had done on the BATS Project and was doing on the COFT-SA program. (*Id.* at 99.)

This debate over the USB port continued, as Plaintiff responded to the team that he had "talked to the [Internal Audit] people before requesting the item be removed. We will always see delays if my decisions as the COFT-E Lead Engineer are second guessed without value added reasoning." (*Id.*) To this, Mr. Briar retorted:

> It is NOT against [Internal Audit] policy to have the USB installed on the system. It IS currently against [such] policy to use unauthorized non-government approved devices on this USB port.
>
> It makes common sense to build this functionality into the

system now[,] like we did in the BATS and we are currently doing for the COFT-SA.

Don't blame me for delays because I am second guessing you [, Plaintiff]. You are only being questioned because your plan does not make sense. The last briefing I had was that [Ms. Ryan] was . . . responsible for all engineering on all Bradley programs. Your titles DO NOT impress me and I am not going to stop asking questions simply because you say so.

You can call this an episode or you can cry to [Mr. Collins]. I no longer care anymore, I will be in the office 13 December and you and I can discuss this face to face like men, or we can have another flippin meeting where you can whine and complain some more to everybody about how out of control I am.

(*Id.* at 98–99.) Half an hour later, Plaintiff forwarded Mr. Briar's reply to Mr. Collins stating that:

I should not have to keep dealing with this disrespect. I feel compelled to leave [Mr. Briar] off of engineering emails because he tries to stop just about everything I put in motion. He is more of a hindrance to me than support. Not sure how to fix this. Meetings do not seem to work.

(*Id.* at 104.)

The evening of December 1, 2010, Plaintiff emailed Mr. Briar, informing him that he "had a collection of [his] disrespectful emails" and that Plaintiff would not allow Mr. Briar to disrespect him or his position. (*Id.* at 97.) Plaintiff also stated that he was seeking assistance "from people at a higher level," as Mr. Briar's behavior was "unbecoming of a Government support contractor." (*Id.* at 98.) Mr. Briar responded that:

 [t]he difference between you and me is that you will insult me passively in your emails and you do not give me the respect I have tried to give you. 90% of everything could be resolved by talking to me face to face. I have tried to work

with you and have complied with everybody's orders to play nice. You do not value me as a legitimate member and until you do[,] we will continue to have issues.

I would respect you more if you talked to me or gave me a call so we can discuss differing viewpoints. Yet you want email traffic so you can cover your ass in the future. Because that [is] what [it is] really about. The one thing I have noticed is that you do not do anything unless you find some way to benefit. I may go off half cocked but I am passionate about my job . . . . I have gone through my chain of command . . . and requested to be moved off this team. I was told I am not going anywhere. So you are going to have to deal with me for a long time.

I have shown these emails to my leadership. I have nothing to hide. Again[,] be a man and talk to me. This email thing is getting old. I may have an issue with tact and candor but that is who I am. I won't lie to you about how I feel about something.

(*Id.* at 96–97.) Mr. Briar then forwarded his exchange with Plaintiff to Ms. Ryan, Mr. Dunlap, and Mr. Collins late on December 1, 2010. (*Id.* at 96.) On December 2, 2010, Mr. Collins emailed Plaintiff informing him that he needed to talk with him and not to send any more emails until they did. (*Id.* at 109–110.)

## C.    COFT-E Project Reassignment

According to Plaintiff, he met with Mr. Collins on the morning of December 10, 2010 ("**December 10 Meeting**") where Mr. Collins informed Plaintiff that he needed to separate Plaintiff and Mr. Briar. (*Id.* at 109; *see also* 27-1, pp. 28, 34.) Consequently, Plaintiff was removed from the COFT-E Project and reassigned to the BFIST Project ("**COFT-E Reassignment**"). (Doc. 27-3, p. 109.)

Following the December 10 Meeting, Plaintiff emailed Wafa Makhlouf

("**Ms. Makhlouf**"), GCTT's director of engineering (*see* Doc. 27-4, p. 9), on December 10, 2010, seeking assistance and forwarded the prior email traffic concerning the USB port issue:

> I have been trying to get resolution through [Mr. Collins] and . . . [Mr. Dunlap] (and even [Mr. Labalbo] listened during a couple of meetings). I have seen similar situations on past programs. When someone on the team has a problem with having me as the Leader I get removed from the team without cause. In this case, I have been trying to stop blatant disrespect for me and my position on the team from one of the team members. I found out this morning that engineering has decided once again to remove me from the project. I view that as unfair and unprofessional. I have never seen any other Lead Engineer treated the way I am being treated. [The disrespect] . . . is truly blatant. That is why I am shocked to see that the fix is to remove me.

(Doc. 27-3, p. 103).

In an email to himself on December 10, 2010, Plaintiff stated:

> [Mr. Collins] mentioned that the issue between [Mr. Briar] and me has been going on for about six months. I told [Mr. Collins] that the issue is not as it is being made out to be. The real issue is that [Mr. Briar] disrespects me and my position. [Mr. Briar] has a problem with me being in an authoritative position over him. I reminded [Mr. Collins] that [Mr. Briar] has shown that in his emails.

(*Id.* at 109.) On the suggestion of Ms. Makhlouf and Mr. Collins, Plaintiff and Mr. Briar met on December 14, 2010. (*Id.* at 120; *see also* Doc. 27-1, p. 27–28.) Following this meeting, Plaintiff represents that he had no further disputes with Mr. Briar. (Doc. 27-3, p. 120.)

## D.     Equal Employment Opportunity Commission

On January 19, 2011, Plaintiff initiated contact with an Equal Employment Opportunity Counselor. (Doc. 27-3, p. 48.) Plaintiff then filed a formal complaint

("**EEO Complaint**") with the Equal Employment Opportunity Commission ("**EEOC**") on April 6, 2011. (*Id.* at 4, 38.) In his EEO Complaint, Plaintiff alleged that he endured harassment, derogatory remarks, and a hostile work environment because of his race in violation of Title VII. (*Id.* at 4.) The EEOC administrative judge issued judgment in favor of Defendant ("**EEOC Decision**"). On appeal, the EEOC Decision was affirmed.[4]

### E.    Instant Action

Plaintiff initiated this Title VII action against Defendant on January 29, 2016. (Doc. 1.) In his Complaint, Plaintiff asserts a claim for: (1) discrimination based on disparate treatment; and (2) retaliation based on the COFT-E Reassignment after complaining about Mr. Briar's conduct.[5] (*See id.* 26–46.) As Defendant's Motion has been fully briefed (Docs. 28, 29), the matter is ripe for consideration.

## II.    LEGAL STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence

---

[4] Although neither party submitted the EEOC decision or the appellate decision that affirmed the EEOC decision, these facts are undisputed. (Doc. 1, ¶ 25; Doc. 12, ¶ 25.)

[5] In his Complaint, Plaintiff also asserts a retaliation claim based on actions involving separate supervisors and separate conduct subsequent to Plaintiff's time on the Bradley Gunnery Team. (*See* Doc. 1, ¶ 37–41.) But Plaintiff concedes that his appeal to the Merit Systems Protection Board and the Federal Circuit waived this retaliation claim. (Doc. 28, pp. 19–20.) Hence the Court limits its discussion of Plaintiff's retaliation claim to his COFT-E Reassignment. (*See* Doc. 28, pp. 20-21; Doc. 29, p. 3.)

demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys*, 941, F.2d 1428, 1438 (11th Cir. 1991)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) it may simply point out an absence of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Four Parcels*, 941 F.2d at 1438 (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflict arises between the facts evidenced by the parties, [the] court credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). However, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### III.    ANALYSIS

To begin, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" that individual's race. 42 U.S.C. § 2000e-2(a)(1). Liability under Title VII encompasses disparate treatment or intentional discrimination. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). To prove disparate treatment, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against him on the basis of a protected characteristic. *See id.; see also Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016).

### A.    Disparate Treatment

Disparate treatment can take two distinct forms: (1) "a 'tangible employment action,' such as a firing or demotion; or (2) "a hostile work environment that changes 'the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned.'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004)). In his Complaint, Plaintiff does not identify the form of his disparate treatment claim. (Doc. 1, ¶¶ 26–33.) Nevertheless, in its Motion, Defendant presumes that Plaintiff has alleged both claims. (Doc. 27, pp. 17–24.) So the Court addresses both.

### 1.    Tangible Employment Action

Plaintiff claims to have suffered an adverse employment action as a result the COFT-E Reassignment. (Doc. 27, pp. 17-18; Doc. 28, pp. 15-16.) Where, as here, a plaintiff

relies on circumstantial evidence to prove discriminatory intent, a court employs the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Denny v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).

Under this framework, the plaintiff must first establish a prima facie case of discrimination ("**Prima Facie Stage**"). *McDonnell Douglas*, 411 U.S. at 802. Once established, the defendant then must come forward with evidence that articulates some legitimate, nondiscriminatory reason for the adverse employment action "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Plaintiff may then attempt to show that the proffered reason was merely a pretext, and that the defendant's true intent was discriminatory ("**Pretext Stage**"). *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

At the Prima Facie Stage, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) his employer treated similarly-situated employees outside the protected class more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802). Defendant only attacks the adverse employment action element of Plaintiff's prima facie case. (Doc. 27, pp. 17–18.)

### a.     Adverse Employment Action

An adverse employment action is one where an employee suffered "a *serious and material* change in the terms, conditions, or privileges of employment" when "viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232,

1239 (11th Cir. 2001) (emphasis added). "[I]f an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005); *see also Davis*, 245 F.3d at 1239. A "transfer to a different position can be adverse if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).

Defendant attempts to satisfy its initial burden on summary judgment by focusing on Plaintiff's admission that he suffered no reduction in pay as a result of COFT-E Reassignment. (*See* Doc. 27-1, p. 34.) From this, Defendant concludes that there has been no adverse employment action. (Doc. 27, p. 18.) Without disputing this compensation point, Plaintiff retorts that the involuntary COFT-E Reassignment resulted in a reduction of responsibilities as the lead engineer—namely, reviewing the work of other engineers (*see* Doc. 27-1, pp. 14–15, 34), which is corroborated by Mr. Collins' deposition testimony that Plaintiff served as the functional lead engineer on BATS and COFT-E when he started on the Bradley Gunnery Team (Doc. 27-4, p. 9). Mr. Collins also testified that Plaintiff would be "a team of one" on the BFIST Project and, thus, would necessarily no longer review the work of other engineers.[6] (*See* Doc. 27-4, p. 10.)

Defendant's singular focus on compensation ignores the principle that "Title VII does not require proof of direct economic consequences in all cases." *Davis*, 245 F.3d

---

[6] Plaintiff's assertion that the BFIST Project was "non-existent" (Doc. 28, p. 16) is unsupported by the record, as the evidence demonstrates Plaintiff did work, albeit very little, on the BFIST Project after the COFT-E Reassignment (Doc. 27-3, p. 120).

at 1239. When viewed in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Plaintiff suffered a reduction in responsibilities from the COFT-E Reassignment. At a minimum, therefore, Plaintiff has established a question of fact as to whether he suffered an adverse employment action.

### b.    Pretext

However, even if the Court assumes that Plaintiff has satisfied a prima facie case,[7] Defendant has proffered a legitimate, nondiscriminatory reason for his reassignment— namely, the unresolvable conflict between Plaintiff and Mr. Briar and the resulting negative impact on the Bradley Gunnery Team. (Doc. 27-4, p. 9; *see also* Doc. 28-3, pp. 55, 57; Doc. 27-6, p. 24.) The Court readily concludes that the unresolvable personality conflict between Plaintiff and Mr. Briar was a legitimate basis for the COFT-E Reassignment. *See Carter v. Sec'y of Navy*, 492 F. App'x 50, 52 (11th Cir. 2012) (finding that the plaintiff had failed to demonstrate pretext where defendant's proffered reason for the plaintiff's transfer was motived by a personal conflict between the plaintiff and his supervisors).[8]

At the Pretext Stage, Plaintiff must "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark*, 990 F.2d

---

[7] In its Motion, Defendant did not address the remaining elements of Plaintiff's prima facie case. (*See* Doc. 27, p. 18.) As such, the Court limits its discussion to the arguments briefed.

[8] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

at 1228); *see also Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Burdine*, 450 U.S. at 256). To do so, a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. *Brooks*, 446. F.3d at 1163. A reason is not pretextual "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. Plaintiff has failed to satisfy his burden.

Plaintiff does not argue that the conflict concerning Mr. Briar or its resulting negative impact was conjured up by Defendant in order to transfer him. Nor could he. The flurry of emails in the record shout for themselves. (*See* Doc. 27-3, pp. 61–113.) Nevertheless, Plaintiff posits racism as the real reason for the COFT-E Reassignment.

In support, Plaintiff first asserts that Mr. Briar should have been reassigned because he ostensibly started the conflict. (Doc. 28, pp. 16-17.) But as Mr. Dunlap explained, Mr. Briar's qualification as a Bradley master gunner was invaluable to the Bradley Gunnery Team. (*See* Doc. 28-3, pp. 48–49; *see also* Doc. 27-4, p. 9.) Even assuming that Mr. Briar instigated the conflict, Plaintiff fails to explain how that fact transforms the decision to reassign him into one infected with a discriminatory motive. This "he-started-it" argument simply quarrels with the wisdom of Defendant's reasoning, which is insufficient to establish pretext. *See Alexander v. Fulton Cty. Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000).

The Court is not in the business of adjudging whether an employment decision is fair or prudent, as it does "not sit as a super-personnel department that reexamines an entity's business decision." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)

(en banc). This principle is well-illustrated here, as Plaintiff distills his frustration to the fact that Mr. Collins and Mr. Dunlap had "an issue between a black man and a white man" and "they chose the white guy." (Doc. 27-1, p. 28.) Unless Plaintiff can point to evidence that such a choice is racially motivated, the Court will not intervene. *Id.* Because Defendant's "proffered reason is one that might motivate a reasonable employer," Plaintiff "must meet that reason head on and rebut it." *See Chapman*, 229 F.3d at 1030. Plaintiff has not done so.

Plaintiff then directs the Court to Mr. Dunlap's "unprofessional and unethical" conduct of discussing his concerns about Plaintiff with Mr. Briar. (Doc. 28, p. 17.) Mr. Dunlap admits that he discussed issues concerning Plaintiff with Mr. Briar and explained to Mr. Briar that he and Ms. Ryan were working to resolve those issues. (Doc. 28-3, p. 70–72.) Even assuming these conversations were unprofessional and unethical, similar to his first argument, nothing substantiates that they were born of racial animus. *See Hicks*, 509 U.S. at 515.

Plaintiff next attempts to establish pretext by pointing to Mr. Collins' verbal declaration that Plaintiff was to head up the BFIST Project. (Doc. 28, p. 17.) But since Mr. Briar served as SME on the BFIST Project (Doc. 27-1, p. 28.), Plaintiff reasons that Mr. Collins' assertion that he needed to separate him and Mr. Briar is false. (*Id.* at 28; *see also* Doc. 28, p. 17.) Mr. Collins' assertion is not inconsistent with Defendant's articulated reason for the COFT-E Reassignment. Rather, it supports that an unresolvable conflict existed. Even accepting Plaintiff's argument, he only quibbles with the effect of the COFT-E Reassignment, rather than the reason itself. *Alexander*, 207 F.3d at 1341. Again,

that Plaintiff's evidence suggests that an employment action was unwise, unfair, or inaccurate does not alone suggest that it was discriminatory. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253 1266-67 (11th Cir. 2010).

Finally, Plaintiff reasons that, because Defendant has not promoted any other African-American engineers, its decision to reassign him must have been discriminatory. (Doc. 28, p. 17.) Plaintiff presents no evidence for this conclusory allegation; thus, standing alone, it is insufficient to raise an inference of pretext or intentional discrimination. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376–77 (11th Cir. 1996) (noting that conclusory allegations of discrimination, without more, do not raise an inference of pretext). As none of Plaintiff's arguments viewed separately or together raise an inference of pretext, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim by tangible employment action.

### 2. Hostile Work Environment

Apart from the COFT-E Reassignment, Plaintiff also claims that he endured constant harassment from Mr. Briar and that Mr. Collins, Mr. Dunlap, Mr. Labalbo, and Ms. Makhlouf failed to intervene on his behalf. (*See* Doc. 1, ¶¶ 9–17; Doc. 28, pp. 18–19.) Title VII protects employees from being required "to work in a discriminatorily hostile or abusive environment." *Mendoza v. Borden, Inc.*, 195 F.3d 123, 1244 (11th Cir. 1999) (en banc). To establish a hostile work environment claim based on race, a plaintiff must show that: (1) he is a member of a protected group; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected group; (4) the harassment was so severe and pervasive that it altered the terms or conditions of

his employment; and (5) the employer was vicariously or directly liable for the environment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

Defendant contends that Plaintiff cannot establish that the offending conduct was based on his race, as opposed to some other permissible reason. (Doc. 27, pp. 22–23.) Plaintiff's allegations of harassment almost exclusively concern the email exchanges between Mr. Briar and himself. (*See, e.g.*, Doc. 27-3, pp. 67, 96–99, 104.) Despite Plaintiff's arguments to the contrary, the Court is not persuaded that these communications were directed at Plaintiff's race. (*See id.* at 16-17.)

While there no doubt was a personality conflict and incivility between Plaintiff and Mr. Briar, office squabbles and tension between team members do not demonstrate that Mr. Briar's harassing conduct toward Plaintiff was racially-based. Indeed, "[i]t is a bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Jones*, 683 F.3d at 1297. Plaintiff has pointed to no evidence of any overt racial animus—racial comments, epithets, insults, or overtones— directed to him. Mr. Briar's communications, while perhaps curt, disrespectful, and unprofessional, show nothing more than disagreements and discord among co-workers, which are not actionable under Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 797 (1998) ("[d]iscourtsey and rudeness should not be confused with harassment"). Title VII is not a general civility code. *Id.* at 788.

Although overt racial harassment is not required to establish a hostile work environment, Plaintiff must still show that race was a substantial factor in his harassment. *See Jones*, 683 F.3d at 1297. Plaintiff has failed to show that race played any role in the

alleged harassment. At best, he has shown an unpleasant and tense working environment, imbued with egos, interpersonal conflicts, and rifts between co-workers. As Plaintiff himself stated, "the real issue is that [Mr. Briar] disrespects me and my position." (Doc. 27-3, p. 109.) Without more, Plaintiff cannot call on Title VII to shield him from such benign and trivial comments. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007).

Plaintiff also contends that he has demonstrated a hostile work environment because Mr. Collins and Mr. Dunlap failed to intervene on Plaintiff's behalf. (Doc. 28, p. 19.) This argument finds no support in the record. In fact, the record shows that on at least two occasions—the July 30 Meeting and the September 30 Meeting—Mr. Collins and Mr. Dunlap attempted to referee and resolve the verbal sparring between Plaintiff and Mr. Briar. (Doc. 27-1, pp. 19, 22, 30.) It is true that Mr. Briar, who is Caucasian, remained on the COFT-E Project and Plaintiff, who is African-American, was reassigned. (*See* Doc. 27-1, p. 28.) But Plaintiff cannot invent discriminatory motive from a wrong personnel choice. As Plaintiff has failed to show he was subjected to an objectively hostile work environment based on his race, this claim fails as a matter of law.[9]

## B. Retaliation

In addition to disparate treatment, Title VII also prohibits an employer from

---

[9] Although Plaintiff reasserts his pretext arguments, hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002), which are not analyzed under the *McDonnell Douglas* burden-shifting framework, *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 510 (11th Cir. 2000). Thus, it is unnecessary to address those arguments again.

discriminating against an employee because he has opposed any unlawful employment practice or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. 2000e-3(a). Plaintiff rests his retaliation claim on the COFT-E Reassignment. (Doc. 1, ¶¶ 26, 27, 31.) According to Plaintiff, his reassignment was retaliatory because he reported his conflict with Mr. Briar to his supervisors. (*See id*; Doc. 28, p. 19.)

Because Plaintiff's retaliation claim relies on circumstantial evidence, the Court again employs the *McDonnell Douglas* burden-shifting framework. *Brown v. Ala. Dep't Transp.*, 597 F3d 1160, 1181 (11th Cir. 2010). To prove a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) some causal connection between the two events. *Trask v. Sec'y Dep't of Veterans Affairs*, 822 F.3d 1179, 1193–94 (11th Cir. 2016). The pretext stage requires that: (1) Defendant articulate a legitimate, non-retaliatory reason for the adverse employment action, *see Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001); and (2) Plaintiff prove but-for causation, *see Smith*, 565 F. App'x at 779.[10]

---

[10] In *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013), the U.S. Supreme Court articulated the "but-for causation" standard; however, it did not articulate at what stage to apply the but-for causation analysis, *Ramirez v. Bausch & Lomb, Inc.*, 546 F. App'x 829, 833 n.2 (11th Cir. 2013). Nevertheless, the Eleventh Circuit has indicated its intention to decide whether retaliation was the but-for cause at the pretext stage. *Mealing v. Ga. Dep't of Juvenile Justice*, 564 F. App'x 421, 427 (11th Cir. 2014), *cert. denied* 135 S. Ct. 1165 (2015); *see also Frazier v. Sec'y, Dep't of Health & Hum. Servs.*, No. 16-16329, 2017 WL 4334037, at *5 (11th Cir. Sept. 29, 2017); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1334 (11th Cir. 2013) (applying but-for causation at the pretext stage in the ADEA context). Finding the Eleventh Circuit's unpublished opinions persuasive, the Court follows suit.

Before addressing the substance of Plaintiff's retaliation claim, Defendant first asserts that it is barred because he has failed to exhaust his administrative remedies. (Doc. 29, p. 2.) Alternatively, Defendant argues that Plaintiff: (1) has failed to establish a prima facie case; and (2) has not demonstrated the requisite but-for causation. (Doc. 27, pp. 13, 16 n.2; Doc. 29, pp. 2–3.) The Court agrees with Defendant's alternative arguments.

## 1. Exhaustion

Prior to filing a Title VII action, a plaintiff must first file a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 335 F.3d 1277, 1280 (11th Cir. 2004). In light of this exhaustion requirement, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (quoting *Alexander*, 207 F.3d at 1332). A plaintiff may not raise "[a]llegations of new acts of discrimination" in later judicial proceedings. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989).

Failure to administratively exhaust is an appropriate ground on which to grant summary judgment. *See Swain v. Hoffman*, 547 F.2d 921, 923 (5th Cir. 1977).[11] Courts are nonetheless "extremely reluctant" to bar Title VII claims based on procedural technicalities and will allow those judicial claims that "amplify, clarify, or more clearly focus the allegations in the EEOC complaint." *Gregory*, 335 F.3d at 1279–80. To determine whether the complaint falls within the scope of the EEOC complaint, a court considers

---

[11] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

whether the complaint is "like or related to, or grew out of, the allegations" contained in the EEOC charge. *Id.*

As previously noted, Plaintiff initially contacted an EEO counselor on January 19, 2011. (Doc. 27-3 p. 15.) In the EEO Counselor's Report, Plaintiff described the matters giving rise to the EEO Complaint. (*Id.* at 16.) He began by stating that he was assigned different duties on December 10, 2010—the day of the COFT-E Reassignment. (*See id.*) Plaintiff continued that:

> [I believe] that [I have] been a victim of discrimination because [I] was assigned different duties as a Computer Engineer in the Lead Engineers Position on a project. [I] [believe] that this action was taken against [me] because [I] complained that [I] was being harassed by a Caucasian team member [Mr. Briar]. [I believe that I] informed [my] superiors of the harassment but they [did] not care. [I believe I] was punished for reporting on a Caucasian employee. [Mr. Collins] has informed me that he assigned different duties to [me] because [Mr. Collins] . . . could not resolve the issue so [Mr. Collins] assigned [me] other duties to reduce the tension between [me] and Mr. Briar.

(Doc. 27-3, p. 16.)

Plaintiff then filed a formal EEO Complaint on April 6, 2011. (Doc. 27-3, p. 4.) In it, Plaintiff alleged that "[Mr. Collins] violated [Plaintiff's] anti-retaliation rights covered in Title VII." (*Id.* at 10.) Although the allegation concerning retaliation is vague, Plaintiff also alleged that "removing [him] from the leadership position on the COFT-E [Project] solidified a pattern of removing [him] from leadership positions without cause." (*Id.* at 29.) Plaintiff filed the EEO Complaint without the benefit of counsel. (*Id.* at 17.) In light of this, the Court will construe it liberally. *Danner v. Phillips Petroleum Co.*, 447 F.2d 159,

161–62 (5th Cir. 1971). Under the circumstances, the Court finds that Plaintiff's retaliation claim based on the COFT-E Reassignment grew out of the allegations in the EEO Complaint and, thus, he has exhausted his administrative remedies.

### 2. Prima Facie Case

As for Plaintiff's prima facie case, Defendant attacks: (1) the adverse employment action element; and (2) the protected activity element. (*See* Doc. 28, p. 16 n.2; Doc. 29, p. 2.) Without retreading its previous analysis, the Court notes that Plaintiff has established a genuine issue of material fact whether the COFT-E Reassignment was materially adverse under the broader retaliation standard, which requires a showing that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R. Co. v. White*, 548 U.S. 53, 68 (2006); *Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008) (noting that after *White* an adverse action in the retaliation context does not require "an ultimate employment decision or substantial employment action").

As to the protected activity element, Defendant contends that Plaintiff's informal complaints prior to the COFT-E Reassignment are insufficient. (Doc. 29, p. 2.) However, the Eleventh Circuit has established that the protection afforded by the anti-retaliation provision extends not only to individuals who have filed formal complaints, but also to those who informally voice complaints to their superiors or who use internal grievance procedures. *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam). Thus, Plaintiff's informal complaints may be protected activity. *See, e.g., Campolieto v. Int'l Mall Motor Co.*, No. 08-23283-CIV-HOEVELER, 2010 WL 11506020, at *1

(S.D. Fla. Aug. 10, 2010) (finding that the plaintiff's email complaining about co-worker's comments about Argentineans was protected activity).

Even so, Defendant contends that the content of those informal complaints does not amount to protected activity because Plaintiff complained only about Mr. Briar's disrespect, as opposed to any racial harassment or racially motived acts by Mr. Briar. (Doc. 29, p. 3.). The Eleventh Circuit has held that, at a minimum, protected activity requires a plaintiff to communicate his belief to his employer that discrimination is occurring. *See Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009). It is insufficient to complain about a co-worker's behavior and rely on the employer to infer that discrimination has occurred. *See id.*; *see also Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) (affirming district court's finding that the plaintiff's internal complaints to her supervisor about a co-worker's email were not protected activity because the plaintiff's "complaints had no relationship to race; rather, they stemmed from a personality conflict with a co-worker").

Here, even the most generous reading of Plaintiff's emails to Mr. Collins and Mr. Dunlap do not establish that Plaintiff communicated his belief that discrimination was occurring. The emails themselves make no reference to racial discrimination or harassment; rather, they evidence the personality conflict between Plaintiff and Mr. Briar. (*See e.g.*, Doc. 27-3, pp. 68, 72, 88, 104.) Indeed, Plaintiff testified that when he met with Mr. Collins and Mr. Dunlap at the July 30 Meeting and the September 30 Meeting, there was no discussion of race. (Doc. 27-1, p. 20, 22.) Although Plaintiff testified that he raised the issue of race in a meeting with Ms. Makhlouf on December 13, 2010, that was only

after the COFT-E Reassignment—three days too late as it turns out. (*Id.* at 30.) As such, Plaintiff has failed to demonstrate that he engaged in protected activity and, thus, has failed to establish a prima facie case of retaliation. [12]

### 3. Pretext

Defendant failed to proffer a legitimate, non-retaliatory reason for COFT-E Reassignment. (*See* Doc. 27, p. 16 n.2.) Without divining defense counsel's strategy, it presumably meant to reassert the same reason it proffered for Plaintiff's disparate treatment claim by tangible employment action. Nonetheless, Defendant does assert that Plaintiff cannot establish that his complaining was the but-for cause of the COFT-E Reassignment. (Doc. 27, p. 16 n.2.) The Court agrees.

To avoid summary judgment, Plaintiff must produce evidence from which a reasonable jury could determine that Defendant's "desire to retaliate was the but-for cause" of the COFT-E Reassignment. *See Univ. of Tx. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2521, 2528 (2013). Although the Eleventh Circuit has not articulated the manner or degree of proof required to show but-for causation, other courts have found that temporal proximity standing alone is not sufficient proof of but-for causation. *See Strong v. Univ. Health Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *see also Montgomery v. Bd. of Trs. Of the Univ. of Ala.*, No. 2:12-cv-2148-WMA, 2015 WL 1893471, at *2 (N.D. Ala. Apr. 27, 2015). As the Fifth Circuit noted, "such a rule would unnecessarily tie the hands of employers."

---

[12] Defendant does not challenge the causal connection element of Plaintiff's prima facie case. (*See* Doc. 27, p. 16 n.2.) Hence the Court cabins its discussion to the arguments briefed.

*Strong*, 482 F.3d at 808.

Because Plaintiff cites and relies on the prima facie causation standard, he does not actually argue that he meets the but-for causation; rather, he maintains that the short time between his last complaint on December 1, 2010, and the COFT-E Reassignment sufficiently demonstrates a causal link, establishing that his complaint and the COFT-E Reassignment are not unrelated. (Doc. 28, pp. 13, 21.) Although this "very close" temporal proximity, standing alone, may sufficiently establish a causal connection under the prima facie case, *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), the Court finds it is insufficient under the but-for causation standard, *see Strong*, 482 F.3d at 808. Hence Plaintiff has failed to establish that but for his December 1, 2010 complaint he would not have been subject to the COFT-E Reassignment. Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim. *See Trask*, 822 F.3d at 1194–95 (affirming the district court's grant of summary judgment in favor of the employer on the plaintiff's retaliation claim, in part, because employee failed to establish but-for causation). After review of the record, Plaintiff does not have a federal cause of action under Title VII, and Defendant's Motion is due to be granted.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion for summary judgment and memorandum of law (Doc. 27) is **GRANTED**.

2.  The Clerk is **DIRECTED** to enter judgment in favor of Defendant Secretary of the Army and against Plaintiff Harroll Ingram on Plaintiff's

discrimination and retaliation claims set forth in the Complaint. (Doc. 1, ¶¶ 26–46).

3.    The Clerk is **DIRECTED** to terminate all pending deadlines, and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 13, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record